UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| AARON McWILLIAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:13-CV-105 |
| | ) |
| JOHNSON CITY, TENNESSEE, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM OPINION AND ORDER

Johnson City, Tennessee, the only remaining defendant in this section 1983 action, filed a Motion to Dismiss or, in the Alternative, for Summary Judgment, [Doc. 33]. The defendant argues first that there is no underlying constitutional violation. Second, the defendant argues that no policy or custom was a moving force in causing a constitutional violation. The plaintiff has responded, [Doc. 38], and the defendant replied, [Doc. 39].[1] For the reasons stated below, the Court finds that there was no constitutional violation, and the defendant's motion is GRANTED. Because the motion is granted on the first ground, this Court will not address the second.

**I. FACTS**

The facts are fully set out the defendant's statement of material facts, [Doc. 34], and brief, [Doc. 36]. This Court notes that the plaintiff failed to follow this Court's Scheduling Order in properly responding to the defendant's statement of facts. *See* [Doc. 29]. Nevertheless, in the plaintiff's response, [Doc. 38], he fails to dispute the defendant's material facts. As such, the Court sets forth below the facts from defendant's brief:

---

[1] The plaintiff filed a sur-reply, [Doc. 41]. However, the plaintiff failed to seek leave of the Court prior to filing. As such, it will not be considered. *See* E.D. Tenn. L.R.7.1(d).

On May 24, 2012, Aaron McWilliams submitted an application to the City of Johnson City seeking an on premise beer license. [Decl. Feathers, Ex. "A", ¶ 3]. The application was distributed to various departments of the City on the same day the application was filed with the request that the departments perform their respective customary investigative evaluations as to whether the beer license should be recommended for approval. [Decl. Feathers, Ex. "A", ¶ 4]. More than one City department had difficulty communicating with McWilliams to allow their evaluation of the application. Both the Fire Department and Building Department were unable to make inspection arrangements with McWilliams until nearly two (2) months after his beer application had been distributed for review. [Decl. Feathers, Ex. "A"; See, email attachments].

With respect to the Police Department, McWilliams' beer license application was initially assigned to Investigator Joey Whitlock in the department's Criminal Investigation Division ["CID"], but reassigned to a more experienced investigator, Lieutenant Steve Sherfey, when Officer Whitlock was unable to reach McWilliams. [Decl. Sherfey, Ex. "B", ¶ 4]. Lieutenant Sherfey's need to communicate with McWilliams was necessitated when, among other things, several serious prior criminal charges were discovered with respect to McWilliams. The reported past criminal charges included:

08/24/1995 - Mecklenburg, NC – Convict: Fictitious Info to Officer; 07/21/1997 - Cabarrus, NC – Convict: Disorderly Conduct; 05/01/1998 - Mecklenburg, NC – Arraigned: Assault on a Female; 05/01/1998 – Mecklenburg, NC – Arraigned: Misdemeanor Larceny; 05/01/1998 – Mecklenburg, NC – Arraigned: False Imprisonment; 01/23/1997 – Cabarrus, NC – Obstructing Justice (Principal); 08/21/1996 – Cabarrus, NC – Arraigned: Assault on a Female; 07/21/1997 - Cabarrus, NC – Convict: Disorderly Conduct (Principal); 07/11/1993 – Cabarrus, NC – Arraigned: Felony Riot; 07/11/1993 – Convict: Riot – Inciting; 07/11/1993 – Cabarrus, NC – Convict: Assault on a Govt. Official; 10/15/1992 – Cabarrus, NC – Convict: Disorderly Conduct; 04/07/1992 – Cabarrus, NC – Convict: Carrying Concealed; 09/23/1991 – Cabarrus, NC – Convict: Second Degree Trespass; 09/11/1991 – Cabarrus, NC – Arraigned: Assault With a Deadly Weapon; 08/26/1991 – Cabarrus, NC – Convict: First Degree Trespass; 07/25/1991 – Cabarrus, NC – Convict: Assault on a Female; 07/23/1991 – Cabarrus, NC – Convict: Simple Assault; 09/12/1990 – Cabarrus, NC – Convict: Fictitious Info to Officer; 11/03/1988 – Cabarrus, NC – Convict: Simple Assault; 11/03/1988 – Cabarrus, NC – Damage to Property (Principal); 11/03/1988 – Cabarrus, NC – Convict: Damage to

Personal Property; 11/03/1988 – Cabarrus, NC – Arraigned: Felony Probation; 10/27/1988 – Cabarrus, NC – Convict: Simple Assault; 10/25/1988 – Cabarrus, NC – Convict: Assault With a Deadly Weapon; 04/29/1988 – Cabarrus, NC – Convict: Simple Assault.

[Decl. Sherfey, Ex. "B", ¶ 6 and attached printout]. As indicated from the printout, these criminal charges had reportedly occurred mostly in the 1990's and Lieutenant Sherfey was unable to establish the final disposition of McWilliams' criminal charges and whether those criminal charges would preclude the issuance of a beer license under the terms of Johnson City's "alcoholic beverage" ordinance. [Decl. Sherfey, Ex. "B", ¶ 7]. The past practice based on the language of the ordinance was that only convictions in the ten (10) year period prior to the submittal of the beer application were to be used in evaluating an applicant. [Decl. Sherfey, Ex. "B", ¶ 12, Attached Johnson City Ordinance No. 8-212(k)]. Lieutenant Sherfey is prohibited from using the National Crime Information Center (NCIC) data base for the purpose of a criminal background check of a beer license applicant. [Decl. Sherfey, Ex. "B", ¶ 6]. Therefore, as is standard practice in Johnson City, Lieutenant Sherfey utilized a data base known as "Tennessee Leads Online" [TLO]. *Id.*

Since Lieutenant Sherfey was unable to communicate with McWilliams, at some point in the summer of 2012, the ranking officer in the Criminal Investigation Division sent McWilliams' beer application back to the City employee in the Finance Department who was responsible for processing beer applications. [Decl. Sherfey, Ex. "B", ¶ 9]. Lieutenant Sherfey considered it highly unusual that McWilliams had not contacted him about his beer application since it had been his experience that most applicants for this type of license typically called him checking on how soon he could complete his investigation to allow their license application to move forward. [Decl. Sherfey, Ex. "B", ¶ 8]. Lieutenant Sherfey thought that perhaps McWilliams had abandoned his pursuit of a beer license. [Decl. Sherfey, Ex. "B", ¶ 8].

In late September, 2012, approximately four (4) months after submitting his beer application, McWilliams left a telephone message for Lieutenant Sherfey and on September 27, 2012, Lieutenant Sherfey returned his telephone call. [Decl. Sherfey, Ex. "B", ¶ 10]. Lieutenant Sherfey acknowledges that due to the passage of time he could not initially remember who Aaron McWilliams was, but ultimately made the connection and told McWilliams he had unsuccessfully tried to reach him. [Decl. Sherfey, Ex. "B", ¶ 10]. According to Lieutenant Sherfey, McWilliams was irate, hostile, mad and accused him of lying about his efforts to contact him. [Decl. Sherfey, Ex. "B", ¶ 10].

Lieutenant Sherfey, after the September 27, 2012 telephone conversation, retrieved McWilliams beer application, contacted a Police Department in North Carolina where some of McWilliams' criminal charges had originated, but was unable to verify actual convictions of McWilliams. [Decl. Sherfey, Ex. "B", ¶ 12]. Lieutenant Sherfey also contacted the ETSU Department of Public Safety to verify if McWilliams was in fact a student there and whether McWilliams address that was provided on the beer application was the same as that listed on ETSU's records. [Decl. Sherfey, Ex. "B", ¶ 11]. Lieutenant Sherfey also inquired about whether or not ETSU had any information about McWilliams' past criminal charges, some of which appeared to be felony charges. [Decl. Sherfey, Ex. "B", ¶ 11].

Unknown to Lieutenant Sherfey, Officer Orr with the ETSU Department of Public Safety made inquiry of Student Affairs to determine if McWilliams had disclosed his criminal charges when applying to enroll at ETSU. [See, email to McWilliams provided by McWilliams to undersigned counsel, Ex. "C"]. McWilliams, as indicated in the email [Ex. C"] was summoned to appear in the Office of Student Affairs on October 23, 2012 and questioned about his past criminal charges. [*Id*.].

During the inquiry by ETSU, McWilliams submitted to the Office of Student Affairs a North Carolina website public record printout reflecting his time of incarceration and referencing only the criminal offenses resulting in those incarcerations. ['Ex. "D", Record obtained from ETSU by subpoena, dated February 3, 2017, Doc. 31, Subpoena, PageID #: 96; note printed date of October 23, 2012] but also available at:
"North Carolina Criminal Offender -- Public Information: http:///webapps6.doc.state.nc.us/opi/viewoffender.do?method=view&offender0277159&searchLaastName=mcwilliams&search=aaron&listurl=pagelistoffendersearchresults&listpage=1]. None of the charges leading to the incarceration of McWilliams appear to be based on a felony conviction. *Id*.

Whether McWilliams made additional disclosures to ETSU's Office of Student Affairs other than the North Carolina Public Information printout is unknown to this defendant, but ETSU "cleared [McWilliams] to return to class by Dean of Students and Public Safety officers…". [Doc. 2, Complaint, PageID #: 12].

Being unable to verify the final disposition of McWilliams' criminal charges from North Carolina and concluding based on past practice that Johnson City's beer license ordinance only permitted certain criminal offenses occurring within a ten (10) year period preceding the application be considered, McWilliams' application was distributed back to City administrators on October 26, 2012

with the notation "met the criteria required". [Decl. Sherfey, Ex. "B", ¶ 13; See, attachment].

On November 9, 2012, Lieutenant Sherfey was notified that McWilliams had filed a complaint against him for being "rude and disrespectful" during their September 27, 2012 telephone call. [Decl. Sherfey, Ex. "B", ¶ 14; See, attached notice]. Had Lieutenant Sherfey known McWilliams had lodged a complaint against him he would have gladly used that as a basis to ask CID Captain Street to reassign the McWilliams beer application file to another detective. [Decl. Sherfey, Ex. "B", ¶ 11].

McWilliams' "rudeness" complaint against Lieutenant Sherfey was ultimately dismissed following an investigation by Internal Affairs and both Sherfey and McWilliams were notified of this disposition at the same time by a letter dated November 28, 2012. [Decl. Sherfey, Ex. "B", ¶ 15; See, attached notice].

With that, Lieutenant Sherfey closed his McWilliams file, having never had any personal contact with McWilliams other than the single telephone call of September 27, 2012. [Decl. Sherfey, Ex. "B", ¶ 17].

McWilliams' claim that he was denied entry to a public meeting of the City Commission and threatened that if he did enter the meeting he would be arrested for disorderly conduct cannot be validated due to the lack of specificity provided or alleged. [Doc. 2, Complaint, PageID #: 12]. But, what is known is that McWilliams was on the City Commission Agenda for November 15, 2012, was required by the City ordinance to personally appear and presumably did appear without interference on that date, since his beer license was approved. [Decl. Feathers, Ex. "A", ¶ 5; Attached copy of license issued November 16, 2012].

Likewise, from the information provided, an allegation made by McWilliams that an unidentified Johnson City police officer confessed to him that he, McWilliams, had been stopped on the basis of racial profiling cannot be validated. Regardless, Johnson City's Police Department has had a long standing policy directed to a prohibition of racial profiling as described by McWilliams in his complaint. [Decl. Turner, Ex. "E", General Order 300.20 attached].

On April 16, 2013, McWilliams came unannounced to the Johnson City Police Department seeking to speak with the Chief of Police. [Decl. Smith, Ex. "F", ¶ 3]. McWilliams state of mind on this occasion was "alarming" and he was "hostile". *Id*.

On April 19, 2013, McWilliams was arrested by Johnson City Police Officer David Smith for driving on a suspended or revoked license. [Decl. Smith, Ex. "F", ¶¶ 5-6; See, attached Affidavit of Complaint, with supporting printout]. The probable cause for the stop and subsequent arrest of McWilliams was the information reflecting his driving history including multiple North

> Carolina traffic charges for driving on a suspended license and multiple failure to appear charges to answer these criminal citations. *Id*.
>
> Following his arrest and while in the Washington County Detention Center, a facility not owned or operated by the Defendant City of Johnson City or its Police Department [Decl. Turner, Ex. "E", ¶ 6], upon information and belief, McWilliams was transferred to Moccasin Bend Hospital, a psychiatric hospital in Tennessee, on a date unknown to this defendant. [Decl. Smith, Ex. "F", ¶10; See, Ct. record reflecting "status Moccasin Bend"].

[Doc. 36 at 1-7].

## II. SUMMARY JUDGMENT STANDARD

Dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) eliminates a pleading or portion thereof that fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Moreover, Federal Rule of Civil Procedure 8(a)(2) requires the complaint to contain a "short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss under Rule 12(b)(6) requires the Court to construe the allegations in the complaint in the light most favorable to the plaintiff and accept all the complaint's factual allegations as true. *Meador v. Cabinet for Human Res.*, 902 F.2d 474, 475 (6th Cir. 1990). The Court may not grant a motion to dismiss based upon a disbelief of a complaint's factual allegations. *Lawler v. Marshall*, 898 F.2d 1196, 1199 (6th Cir. 1990). The Court must liberally construe the complaint in favor of the party opposing the motion. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). However, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and to "state a claim to relief that is plausible on its face," *id*. at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. Moreover, this Court need not "'accept

as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Ashcroft*, 556 U.S. at 678. Lastly, this Court may consider documents central to the plaintiff's claims to which the complaint refers and incorporates as exhibits. *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001).

Where matters outside of the pleadings are presented and considered by the Court, a Rule 12(b)(6) motion is treated as a motion for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). All parties must be given an opportunity to present material pertinent to the motion when this conversion occurs. *Id.* Because the defendant relied upon filings outside of the pleadings, the motion will be converted to a motion for summary judgment.[2]

Summary judgment is proper where the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To refute such a showing, the non-moving party must present some significant, probative evidence indicating the necessity

---

[2] The plaintiff supplied the defendant with an audio recording taken by him during his arrest on April 19, 2013. The defendant then filed a copy with this Court. The Court agrees with the defendant that this largely inaudible recording is inadequate to create a genuine issue of fact.

of a trial for resolving a material factual dispute. *Id.* at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McClain v. Ontario, Ltd.*, 244 F.3d 797, 800 (6th Cir. 2000). This Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 248-49; *Nat'l Satellite Sports*, 253 F.3d at 907. If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. If this Court concludes that a fair-minded jury could not return a verdict in favor of the non-moving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

The party opposing a Rule 56 motion may not simply rest on the mere allegations or denials contained in the party's pleadings. *Anderson*, 477 U.S. at 256. Instead, an opposing party must affirmatively present competent evidence sufficient to establish a genuine issue of material fact necessitating the trial of that issue. *Id.* Merely alleging that a factual dispute exists cannot defeat a properly supported motion for summary judgment. *Id.* A genuine issue for trial is not established by evidence that is merely colorable, or by factual disputes that are irrelevant or unnecessary. *Id.* at 248-52.

**III. ANALYSIS**

A plaintiff must prove two things in order to make out a case against a governmental entity, i.e. Johnson City. First, the plaintiff must prove that there was an underlying constitutional violation. Second, the plaintiff must prove that a policy or custom of Johnson City was a "moving force" in causing the alleged constitutional violation.

Section 1983 prohibits any person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State" from depriving any U.S. citizen "of any rights, privileges, or immunities secured by the constitution and laws." It is difficult to discern exactly what the plaintiff alleges. Nevertheless, the Court gleans that the plaintiff alleges a violation of his constitutional rights because "upon [the plaintiff] filing a complaint against [a JCPD] officer [he] was retaliated against by JCPD by them contacting [the plaintiff's] school and telling them that [he] need[ed] to be checked that [he is] a convicted felon and that [he] lied on [his] registration. . ." [Doc. 2, PageID#: 12]. The Court's conclusion is bolstered by the fact that the plaintiff originally sued ETSU as well. The Complaint does not raise issues as to failure to train or failure to supervise. Moreover, the plaintiff failed to allege that Johnson City has a policy of racial profiling and arresting African Americans without probable cause and failed to raise any issues as to a police officer's alleged individual capacity liability.[3]

To review, the undisputed facts are that plaintiff applied for a beer license, and a beer license applicant must be investigated to determine whether the applicant meets the qualifications for issuance. In the course of doing so, Lieutenant Steve Sherfey discovered several of the plaintiff's prior convictions. After several months, the plaintiff and Lieutenant Sherfey finally spoke with each other regarding the application on September 27, 2017. Lieutenant Sherfey learned the plaintiff still wished to pursue the license. After the communication, Lieutenant Sherfey resumed his investigation and contacted ETSU to verify the plaintiff was a student, to verify his address, and to inquire about his past criminal charges. Lieutenant Sherfey previously

---

[3] Even if this Court were to construe the Complaint as raising these allegations, such conclusory allegations would not survive the defendant's summary judgment motion. First, the April 19, 2013 arrest by Officer Smith was supported by probable cause. *See* [Decl. Smith, Ex. "F", attached Affidavit of Complaint with supporting printout exhibit of driving history]. Second, Johnson City Police Department has a policy in place that prohibits conduct that the plaintiff claims, if the Complaint is liberally construed, that he was subjected to by a JCPD officer, i.e. racial profiling, excessive force, and detention without probable cause. *See* [Decl. Turner, Ex. "E", ¶ 4; General Order No. 300.20].

9

had been unable to verify some convictions after inquiries elsewhere. Lieutenant Sherfey did not know that ETSU had made inquiries regarding the plaintiff's criminal history. ETSU's inquiry was sent to the plaintiff on October 18, 2012, and he was cleared by ETSU on October 23, 2012. Lieutenant Sherfey sent the beer license application back to the City administrators with the notation "met the criteria required" on October 26, 2012. Lieutenant Sherfey did not know of the plaintiff's complaint against him regarding the September 27, 2013 telephone call until November 9, 2012. This was 17 days after the inquiry by ETSU had ended and after Lieutenant Sherfey signed off on the beer license application.

Taking the plaintiff's allegations as true that Lieutenant Sherfey was rude and disrespectful, this conduct does not rise to the level of a constitutional violation. Lieutenant Sherfey's inquiry to ETSU was not without reasonable suspicion or probable cause. There was a legitimate and articulated need for such inquiry to determine whether the plaintiff was eligible for the beer license. In addition, JCPD policy instructs its officers not to engage in that type of behavior. Moreover, Johnson City took action on the complaint against Lieutenant Sherfey to determine whether he had violated the policy. [Decl. Sherfey, Ex. "B", ¶ 15]. Because Lieutenant Sherfey did not engage in conduct that violated the plaintiff's constitutional rights, there is no underlying constitutional violation.

For the reasons stated above, the plaintiff cannot establish that there was an underlying constitutional violation. Therefore, the Court need not address whether the plaintiff could prove that a policy or custom of Johnson City was a "moving force" in causing the alleged constitutional violation. As such, the defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment, [Doc. 33], is GRANTED. The case will be DISMISSED on the merits. ENTER:

s/J. RONNIE GREER
                                        UNITED STATES DISTRICT JUDGE